UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TASHAN RODNEY,

        Plaintiff,

    -v-                                  20-CV-6130-FPG
                                                   DECISION AND ORDER

NURSE ADMINISTRATOR, JULIE
WOLCOTT, SUPERINTENDENT OF
ORLEANS CORRECTIONAL FACILITY IN
HER OFFICIAL CAPACITY,

        Defendants.

_____

## INTRODUCTION

*Pro se* Plaintiff, Tashan Rodney, is confined at the Orleans Correctional Facility ("Orleans"). On March 3, 2020, he filed a Complaint asserting claims under 42 U.S.C. § 1983 alleging that Defendants provided inadequate medical treatment following his pacemaker surgery in January 2020. ECF No. 1. Plaintiff also moved for injunctive relief, seeking to be placed in a medical housing unit. *Id.* at 5. The Court permitted Plaintiff to proceed *in forma pauperis* and asked Defendants to respond to Plaintiff's motion for injunctive relief. ECF No. 3. Defendants answered the complaint and responded to the motion for injunctive relief on May 13, 2020. ECF Nos. 6, 7, 8. For the reasons that follow, Plaintiff's motion for injunctive relief is DENIED.

## FACTUAL BACKGROUND

### I.    Plaintiff's Allegations

Plaintiff alleges that he had a pacemaker placed on January 25, 2020. ECF No. 1 at 2. Instead of placing him in a medical dorm, Plaintiff was housed in general population "with no real safeguards." *Id.* Plaintiff complained of pain and that his pacemaker malfunctioned, causing his

heart to stop, "leaving him violently crashing to the ground laying there lifeless." *Id.* Prison guards were "reckless [sic] being very aggressive to his condition without any care or concern, callously throwing him in the back of vans." *Id.*

On February 26, 2020, Plaintiff's pacemaker malfunctioned—causing his heart to completely stop—and Plaintiff "collapsed laying lifeless in the middle of the housing unit." *Id.* The lead housing unit officer immediately called for medical to come to the dorm. *Id.* Prison guards "stormed [the] housing unit," demanded that Plaintiff get up, asked him if he was on drugs and "violently yanked off the floor trying to force him onto his feet," which made Plaintiff collapse again. *Id.* at 3. These guards ignored the lead housing unit officer telling them that Plaintiff had just had a pace maker installed. *Id.* The guards carried Plaintiff out of his cell, "banging his head onto the door and carelessly throwing him into the van." *Id.*

Plaintiff was transported and treated at an outside hospital but returned to Orleans the next day. *Id.* Defendant Nurse Administrator "again refused to commit [Plaintiff] in hospital nor medical dorm and again sent him to general population." *Id.* Plaintiff fears he is facing imminent, irreparable harm and that he may die if he is not placed in the medical housing unit. *Id.* at 3-4. Plaintiff provides no evidence corroborating his unsworn allegations.

## II.   Defendants' Response

In response to Plaintiff's allegations, Defendants submitted an affidavit from Dwight D. Lewis, M.D., a physician assigned to Orleans, ECF No. 8, and nearly 300 pages of medical records, ECF No. 10. These records confirm that Plaintiff received a pacemaker in January 2020 at a hospital. ECF No. 8 ¶¶ 8-9. In February 2020, after complaining of chest pain, Plaintiff was transported again to the hospital, where he underwent a battery of tests, all of which returned normal. *Id.* ¶¶ 12-13. Upon returning to Orleans, a doctor instructed Plaintiff to "return to the

infirmary if necessary," and referred Plaintiff to an electrophysiologist the following month.  *Id.* ¶ 14.  Plaintiff's follow-up appointment was normal, and an electrophysiologist appointment was scheduled for March 30, 2020 and rescheduled to May 19, 2020 due to the COVID-19 Pandemic. *Id.* ¶ 15-16.

On April 10, 2020, Plaintiff reported that his cellmate accidentally hit him in the chest, but he did not experience shortness of breath and was administered Motrin.  *Id.* ¶ 17.  He has not reported any subsequent medical issues.  *Id.* ¶ 18.

Dr. Lewis indicated that Plaintiff's pacemaker does not require that he be placed in medical housing, because "Plaintiff has access to medical care twenty-four hours per day, seven days per week.  In fact, Plaintiff's dorm is closest to the infirmary."  *Id.* ¶ 19.  It is not typical for patients with pacemakers to require special medical housing and there is no such housing unit at Orleans. *Id.* ¶¶ 20-21.

## DISCUSSION

### I.   Legal Standard

"A preliminary injunction is considered an 'extraordinary remedy that should not be granted as a routine matter.'"  *Distribution Sys. of Am., Inc. v. Vill. of Old Westbury*, 785 F. Supp. 347, 352 (E.D.N.Y. 1992) (quoting another source).  A court may grant a motion for a preliminary injunction if the movant establishes "(1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of the claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party."  *Allah v. Piccolo*, No. 16-CV-177-FPG, 2018 WL 2381886, at *2 (W.D.N.Y. May 25, 2018).

"Normally, the purpose of a preliminary injunction is to maintain the *status quo ante* pending a full hearing on the merits. . . . Occasionally, however, the grant of injunctive relief will change the positions of the parties as it existed prior to the grant." *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985) (citations omitted), *overruled on other grounds, O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987). "A higher standard applies . . . if the requested injunction is 'mandatory,' altering rather than maintaining the status quo, or if the injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if defendant prevails at a trial on the merits." *People for Ethical Treatment of Animals v. Giuliani*, 105 F. Supp. 2d 294, 303 (S.D.N.Y. 2000), *report and recommendation adopted*, No. 00 CIV. 3972 (VM), 2000 WL 1639423 (S.D.N.Y. Oct. 31, 2000), *aff'd*, 18 F. App'x 35 (2d Cir. 2001). "[A] mandatory injunction should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) (quotations and citation omitted).

## II.   Analysis

Plaintiff seeks a mandatory injunction that would alter the status quo by removing him from the general population and placing him in a medical housing unit.  Therefore, he is required to make a clear showing of entitlement to relief.  Plaintiff has failed to satisfy this burden.

"Establishing irreparable harm is 'the single most important prerequisite' for a preliminary injunction. It is established only when the movant shows the harm is 'actual and imminent' and neither 'remote [n]or speculative' nor a harm that can be remedied with monetary damages or later in the litigation." *Jumale v. Barr*, No. 19-CV-1229-FPG, 2019 WL 5540794, at *2 (W.D.N.Y. Oct.

28, 2019), quoting *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009).

Yet Plaintiff here has not produced any evidence suggesting that Plaintiff will suffer an actual and imminent harm if he is not moved.  Even if Plaintiff could show that he was being denied access to medical care in the the general population, Plaintiff puts forth no evidence to suggest how moving him to a medical unit that does not even exist at his facility—altering the status quo—would remedy his concerns.  *See Ashcroft v. New York State Dep't of Corr. & Cmty. Supervision*, No. 1:18-CV-00603 EAW, 2020 WL 210754, at *1–2 (W.D.N.Y. Jan. 13, 2020) ("Because Plaintiff has not supported his request for preliminary injunctive relief with proper evidence, his motion must be denied."); *Purdie v. Supervisor, Admin. Mail Room, Auburn Corr. Facility*, No. 9:09CV951FJS/ATB, 2010 WL 148639, at *4 (N.D.N.Y. Jan. 13, 2010) (mandatory preliminary injunction denied where the plaintiff submitted no "proof or evidence [meeting] [the preliminary injunction] standard").

Nor can Plaintiff, on this record, establish a likelihood of success on the merits.  "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to his serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  This standard incorporates both objective and subjective elements.  The objective "medical need" element measures the severity of the alleged deprivation, while the subjective "deliberate indifference" element ensures that the defendant acted with a sufficiently culpable state of mind. *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003) (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).  "A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton

infliction of pain.'"  *Harrison v. Barkley*, 219 F.3d 132, 136-137 (2d Cir. 2000) (quoting *Chance*, 143 F.3d at 702 (internal quotation marks omitted)).

A plaintiff must also adequately allege that the defendant had actual knowledge of his serious medical needs, but was deliberately indifferent to it.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Brock v. Wright*, 315 F.3d 158 (2d Cir. 2003); *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).  "[N]ot every lapse in prison medical care will rise to the level of a constitutional violation."  *Smith*, 316 F.2d at 184.  "In most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Id*. at 187.

Plaintiff has not established either the subjective or objective prongs for purposes of obtaining an injunction.  Indeed, it appears from the submissions from both Plaintiff and Defendant that Orleans has been responsive to Plaintiff's medical complaints.  To be sure, Plaintiff has been taken to the hospital several times and has access to medical care around the clock.  Aside from his allegations to the contrary, Plaintiff has not put forth any evidence suggesting that his medical needs are being denied in the general population much less that such a denial was deliberate.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a preliminary injunction contained in his Complaint, ECF No. 1, is DENIED.  This matter will be referred to a magistrate judge for supervision of discovery.

IT IS SO ORDERED.

Dated: May 19, 2020
      Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

6